IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| THIEN BUI,<br><br>      **Plaintiff,**<br><br>v.<br><br>CREDIT CONTROL, LLC, FIRST STEP GROUP, LLC, and CACH, LLC,<br><br>      **Defendants.** | Case No. 19-02755-JAR-GEB |

**MEMORANDUM AND ORDER**

Plaintiff Thien Bui brings this action against Defendants Credit Control, LLC ("Credit Control"), First Step Group LLC ("First Step"), and CACH, LLC ("CACH"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Kansas Consumer Protection Act ("KCPA"), K.S.A. § 50-623 *et seq.* Before the Court is Credit Control's Motion for Judgment on the Pleadings (Doc. 21). The motion is fully briefed, and the Court is prepared to rule. For the reasons explained below, Credit Control's motion for judgment on the pleadings is granted.

**I.     Standard**

The standard for a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is the same as that applied to a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[1] To survive a motion to dismiss under Rule 12(b)(6), a complaint must present factual allegations that, assumed to be true, "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[2] "[M]ere

---

[1] *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012).
[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[3] The court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[4]

The Supreme Court has explained the analysis as a two-step process. First, the court "must take all of the factual allegations in the complaint as true, [but is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"[5] The court must therefore determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[6] Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[7] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[8]

If the court on a Rule 12(c) motion looks to matters outside the pleadings, it generally must convert the motion to a Fed. R. Civ. P. 56 motion for summary judgment.[9] However, the court may consider documents referred to in the complaint if they are "central to the plaintiff's claim" and the parties do not dispute their authenticity.[10] The court has "broad discretion in

---

[3] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).

[5] *Id.* (quoting *Twombly*, 550 U.S. at 555).

[6] *Id.* at 678–79.

[7] *Id*. at 679.

[8] *Id.* at 678.

[9] Fed. R. Civ. P. 12(d); *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384–85 (10th Cir. 1997).

[10] *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1254 (10th Cir. 2005).

determining whether or not to accept materials beyond the pleadings."[11] If the factual allegations in the complaint contradict a properly considered document, then the factual allegations are not well-pleaded facts that the court must accept as true.[12] Finally, the court may take judicial notice of "publicly-filed records in [its] court and certain other courts concerning matters that bear directly upon the disposition of the case at hand."[13] But these public records "may only be considered to show their contents, not to prove the truth of the matters asserted therein."[14]

Here, Credit Control has submitted the Settlement Agreement and General Release ("Agreement") entered into between Plaintiff and First Step.[15] Because the Agreement is referred to in the Amended Complaint and is central to Plaintiff's claims, the Court considers it in resolving this motion. Plaintiff, in response, submits (1) the petition from the lawsuit settled by the Agreement, along with a collection letter sent by First Step attached thereto, (2) the collection letter sent by Credit Control at issue in this case, and (3) excerpts from a bankruptcy filing by SquareTwo Financial Services Corporation and its affiliated debtors, including CACH.[16]

The Court may take judicial notice of the petition, the collection letter sent by First Step attached to that petition, and the bankruptcy filing excerpts. However, Plaintiff cites to First Step's collection letter and to the bankruptcy filing excerpts as alleged evidence that an agency relationship existed between First Step and CACH, improperly using these public records to

---

[11] *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998).

[12] *GFF Corp.*, 130 F.3d at 1385.

[13] *United States v. Ahidley*, 486 F.3d 1184, 1192 n.2 (10th Cir. 2007).

[14] *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)).

[15] Doc. 25-1.

[16] *See* Docs. 34-1, 34-2, 34-3.

prove the truth of the matters asserted therein.[17]  The Court will not judicially notice the truth of the content of those documents.  Finally, the Court may consider Credit Control's collection letter because the Amended Complaint alleges that the letter violated the FDCPA and KCPA, and it is therefore central to Plaintiff's claims.

**II.     Factual Allegations**

Unless stated otherwise, the following facts are alleged in the Amended Complaint.  The well-pleaded facts alleged in the Amended Complaint are assumed to be true for purposes of deciding this motion.

In June 2015, First Step sent Plaintiff a collection letter demanding payment of a $7,878.06 debt on behalf of its client, CACH.  On March 8, 2016, Plaintiff filed suit against First Step, alleging that the collection letter violated the FDCPA because the letter did not warn him that payment of the debt could have the effect of renewing the governing statute of limitations period under Kansas law.  Plaintiff and First Step subsequently entered into a settlement agreement to resolve the dispute.

The Agreement is a five-page document bearing the signatures of Brian C. Bowers, on behalf of First Step, and Brian E. Johnson, on behalf of Plaintiff.  In the first paragraph, the Agreement establishes:

> This Settlement Agreement and General Release ("Agreement") is made and entered into . . . by and between Thien Bui ("Plaintiff") and First Step Group, LLC ("FSG"), with regard to FSG'[s] alleged attempts to collect on a debt allegedly owed by Plaintiff

---

[17] First Step's collection letter is also referenced in the Amended Complaint, but it is not central to Plaintiff's claims.  The Amended Complaint refers to First Step's collection letter only to offer context for Plaintiff's allegations; Plaintiff's claims do not rest on the letter's contents.  *See, e.g., Capital Sols., LLC v. Konica Minolta Bus. Sols. USA, Inc.*, Nos. 08-2027-JWL, 08-2191-JWL, 2008 WL 3538968, at *3 (D. Kan. Aug. 11, 2008) (finding loan documents not central to the plaintiff's claim because its "claims and allegations against the [defendant] [did] not rest on the terms and conditions set forth in the[] loan documents").  The Court, in its discretion, declines to convert Credit Control's motion into one for summary judgment, and therefore does not consider First Step's collection letter in deciding this motion.

("Account"), which was the subject matter of a lawsuit filed by Plaintiff, captioned *Thien Bui v. First Step Group, LLC*, venued in the District of Wyandotte County, Kansas."[18]

To resolve the dispute, First Step agreed to pay Plaintiff ▮▮▮▮▮ First Step also "agree[d] to close its file related to the Account and cease all further collection activities on the Account."[19] Plaintiff, in addition to dismissing the lawsuit with prejudice, agreed to release First Step and its clients, among other related entities, from liability as it related to the debt. The stated intent of the Agreement is to "resolve forever the entire disagreement between Plaintiff and FSG relating to the Account."[20]

The Agreement has an integration clause, which provides that it "contains the entire agreement between [Plaintiff and First Step ('Parties')] and may not be modified or supplemented except by a writing signed by the Parties."[21] The Agreement also includes a choice-of-law provision specifying that it is governed by Tennessee law.

On October 28, 2019, Credit Control sent Plaintiff a collection letter indicating that its client, CACH, had placed the debt with its office for collection. Based on Credit Control's collection letter, Plaintiff brought this action against Credit Control on November 15, 2019, alleging violations of the FDCPA. The case was originally filed in Kansas state court, and Credit Control removed based on federal question jurisdiction under 28 U.S.C. § 1331. On August 20, 2020, Plaintiff filed an Amended Complaint, adding CACH and First Step as defendants and alleging additional claims against Defendants under the KCPA.[22]

---

[18] Doc. 25-1 ¶ 1.
[19] *Id.* ¶ 2.
[20] *Id.* ¶ 6.
[21] *Id.* ¶ 12.
[22] Doc. 17.

**III.    Discussion**

Plaintiff alleges two counts against Defendants for violations of the FDCPA and the KCPA.  The Amended Complaint alleges that First Step entered into the Agreement with Plaintiff "on behalf itself [sic] and its clients," and under the terms of the Agreement, First Step "and its clients agreed not to continue to take collection efforts" on the $7,878.06 debt.[23]  Based on Credit Control's October 28, 2019 collection letter seeking payment on that same debt on behalf of CACH, Plaintiff accuses Defendants of making false, deceptive, and misleading representations, in violation of 15 U.S.C. § 1692e, including subsections 1692e(2)(A), (5), and (10); unlawfully attempting to collect a debt, in violation of 15 U.S.C. § 1692f, including subsection 1692f(1); engaging in deceptive acts and practices, in violation of K.S.A. § 50-626; and engaging in unconscionable acts and practices, in violation of K.S.A. § 50-627.

Credit Control moves to dismiss the Amended Complaint as to the claims asserted against it because any potential theories of relief under the FDCPA and the KCPA rely on Plaintiff's incorrect belief that the Agreement either releases the debt or prohibits CACH and Credit Control from collecting on the debt.  Credit Control asserts that the Agreement prohibits only First Step from collecting on the debt.  In addition, Credit Control contends that the Amended Complaint fails to adequately plead violations of the FDCPA and the KCPA because it does not specify how Credit Control's collection letter violated any of the cited statutory provisions.  Finally, Credit Control contends that the Amended Complaint fails to adequately allege that Credit Control constitutes a "supplier" under the KCPA.

Plaintiff responds that "[t]he gravamen of [his] FDCPA and KCPA claims are that the Defendants are attempting to collect a debt that they agreed not to collect" under the

---

[23] Doc. 17 ¶ 14.

6

Agreement.[24]  Although neither Credit Control nor CACH were parties to the lawsuit settled by the Agreement, or the Agreement itself, Plaintiff asserts that he "contracted with First Step to cease collection on t[he] debt," and "[t]hat agreement binds CACH."[25]  Plaintiff contends that First Step had apparent authority to bind CACH and "secure CACH's promise to cease collection on the account."[26]  In turn, Plaintiff contends, collection activity on the debt by Credit Control, as a subsequent agent of CACH, breached the Agreement and violated the FDCPA and the KCPA.

Plaintiff does not bring a breach of contract claim; he brings only claims pursuant to the FDCPA and the KCPA.  But because the alleged statutory violations are all premised on Plaintiff's contention that the Agreement prohibits CACH from collecting on the debt, this case raises a contract interpretation issue.  Thus, the Court must, as a threshold matter, interpret the Agreement to determine whether it purports to prohibit CACH from collecting on the debt.

   A.   **Choice of Law**

The Agreement includes a choice-of-law provision that states Tennessee law governs.  Plaintiff contends that there are substantive differences between Tennessee and Kansas law on apparent authority and asks the Court to apply Kansas law.  Ordinarily, the Court would determine whether to apply the law of the state chosen by the parties before addressing the substantive merits of the parties' contentions.[27]  However, as explained more fully below, the

---

[24] Doc. 33 at 2.

[25] *Id.* at 10.

[26] *Id.* at 18.

[27] A federal court sitting with federal question jurisdiction "generally appl[ies] federal common law principles to resolve choice of law disputes." *Nat'l Fair Hous. All., Inc. v. Prudential Ins. Co. of Am.*, 208 F. Supp. 2d 46, 62 (D.D.C. 2002); *see also A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1458, 1463–64 (D.C. Cir. 1995)).  Federal common law follows the approach of the Restatement (Second) of Conflict of Laws. *Nat'l Fair Hous. All., Inc.*, 208 F. Supp. 2d at 62.  For state law claims over which a federal court exercises supplemental jurisdiction, however, the court applies the substantive law, including the choice-of-law rules, of the forum state.  *BancOklahoma Mortg. Corp. v. Cap. Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999).

Court need not determine at this juncture whether the choice-of-law provision is enforceable because Plaintiff has not plausibly alleged that First Step had apparent authority to bind CACH to the Agreement even if Kansas law were to apply.

Moreover, Tennessee and Kansas similarly resolve contract interpretation disputes where the language in the contract is clear and unambiguous. Settlement agreements are contracts, and, as such, are governed by contract law.[28] The interpretation of an unambiguous contract is a question of law.[29] In both Tennessee and Kansas, the primary duty of the court is to ascertain and give effect to the intent of the parties.[30] The court initially determines the parties' intent by examining the plain meaning of the words contained within the four corners of the contract.[31] If the language of the contract is clear and unambiguous, that language controls.[32] The words in a contract are ambiguous only if they are susceptible to two or more reasonable interpretations.[33]

B.  **Contract Interpretation**

Plaintiff asserts that the issue in this case is whether First Step had apparent authority to bind CACH to the Agreement. Plaintiff accordingly devotes substantial effort to establishing that an agency relationship existed between First Step and CACH, and that First Step had the requisite apparent authority to bind CACH, citing largely to matters outside of the pleadings. But whether Plaintiff has alleged sufficient facts to support his claim that CACH is bound by the

---

[28] *See Ferguson v. Smith*, 63 P.3d 1119, 1121 (Kan. 2003); *Perkins v. Metro. Gov't of Nashville*, 380 S.W.3d 73, 80 (Tenn. 2012).

[29] *See Carrothers Constr. Co. v. City of South Hutchinson*, 207 P.3d 231, 239 (Kan. 2009); *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002).

[30] *See Carrothers*, 207 P.3d at 239; *Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013) (quoting *Allmand v. Pavletic*, 292 S.W.3d 618, 630 (Tenn. 2009)).

[31] *See Johnson Cnty. Bank v. Ross*, 13 P.3d 351, 353 (Kan. Ct. App. 2000); *84 Lumber Co. v. Smith*, 356 S.W.3d 380, 383 (Tenn. 2011).

[32] *See Carrothers*, 207 P.3d at 239; *Allmand*, 292 S.W.3d at 630.

[33] *See Ark. La. Gas Co. v. Kansas*, 675 P.2d 369, 371 (Kan. 1984) (quoting *First Nat'l Bank of Olathe v. Clark*, 602 P.2d 1299, 1304 (Kan. 1979)); *Allmand*, 292 S.W.3d at 630.

Agreement under an agency theory is only relevant if there was a breach. Plaintiff asserts that CACH breached the Agreement when, through Credit Control, it sought to collect on the $7,878.06 debt. Thus, the Court first examines the express terms of the Agreement to determine whether it purports to prohibit CACH from collecting on the debt.

Plaintiff alleges that, under the Agreement, "First Step Group, LLC and its clients," including CACH, "agreed not to continue to take collection efforts of the time[-]barred debt."[34] To support his assertion that the Agreement contained this "agreement to cease collection on the account,"[35] Plaintiff relies on paragraph 2 of the Agreement, entitled "Scope of the Agreement."[36] That paragraph provides:

> This Agreement encompasses any and all collection efforts of FSG, its current and former representatives, agents, employees, officers, shareholders, successors, predecessors, clients, assigns, affiliates, parents, and subsidiaries as well as its attorneys relative to the Account. FSG agrees to close its file related to the Account and cease all further collection activities on the Account. Plaintiff agrees to take all steps necessary to dismiss the Lawsuit with prejudice within seven (7) business days of receiving the [settlement payment].[37]

Plaintiff points to the first sentence in the paragraph, observing that it states the Agreement "encompasses any and all collection efforts of" First Step as well as its "client[]," CACH. Plaintiff asserts that this first sentence modifies the second, meaning the Agreement prohibits not only First Step but also CACH, as First Step's client, from engaging in "all further collection activities."

---

[34] Doc. 17 ¶ 14.
[35] Doc. 33 at 10.
[36] Doc. 25-1 ¶ 2.
[37] *Id.*

9

The unambiguous terms of the Agreement do not support Plaintiff's interpretation. The Agreement states that "*FSG* agrees to close its file related to the Account and cease all further collection activities on the Account."[38] It says nothing about clients agreeing to do the same. Nor does the Agreement contain a release of the underlying debt. As Credit Control points out, Plaintiff's assertion that the first sentence in paragraph 2 somehow modifies the second conflates language about what the Agreement encompasses with language about what the collection prohibition encompasses. While the Agreement "encompasses any and all collection efforts of" not only First Step but also its clients, the Agreement expressly limits the collection prohibition to First Step.

For the collection prohibition in the Agreement to apply to CACH, the term "FSG," as used in the second sentence of paragraph 2, would need to include First Step's "clients." As expressly defined in the Agreement's first paragraph, however, "FSG" refers exclusively to "First Step Group, LLC."[39] Thus, the Agreement unambiguously prohibits only First Step from collecting on the debt. The unambiguous terms of the Agreement control, and their plain meaning will be given effect. Because the Agreement does not prohibit CACH from collecting on the debt, CACH did not breach the Agreement when Credit Control sent Plaintiff the collection letter seeking payment of the $7,878.06 debt on its behalf.

C.   **Apparent Authority**

Even if the Agreement stated that "First Step *and its clients* agree to cease all further collection activity on the Account," Plaintiff fails to sufficiently plead that First Step had

---

[38] *Id.* (emphasis added).

[39] *Id.* ¶ 1.

apparent authority to bind CACH to the Agreement, even assuming Plaintiff could plausibly allege an agency relationship existed between the two.

Kansas agency law recognizes two types of authority, "one actual and the other ostensible or apparent."[40] "[T]he apparent authority doctrine has relevance only when a third party has dealt with an ostensible agent and then seeks to bind the principle to a transaction despite the fact that the agent had no actual authority to bind him."[41] "Apparent authority exists where a principal, either intentionally or negligently, creates an appearance that its agent possesses authority to act or contract in the name of the principal, and a third party reasonably relies on that appearance of authority."[42] "The apparent authority of an agent to bind the principal rests upon words or conduct of the principal which leads the third party dealing with the agent to reasonably believe the agent's authority is sufficient to cover the transaction in question."[43] In some cases, "the words or conduct of the principal are overt or explicit."[44] In other cases, "the mere relationship between the agent and principal or the title conferred upon the agent by the principal is sufficient to constitute a representation of authority."[45] Illustrative cases involve the so-called powers of position, which include: general manager, president, and partner.[46]

Plaintiff does not allege that CACH made any specific representation that led him to believe First Step had authority to act on its behalf. Instead, Plaintiff asserts that it is the mere

---

[40] *Theis v. duPont, Glore Forgan Inc.*, 510 P.2d 1212, 1216 (Kan. 1973).

[41] *Id.* at 1217.

[42] *FDIC v. Medmark, Inc.*, 902 F. Supp. 1430, 1434 (D. Kan. 1995).

[43] *Bucher & Willis Consulting Eng'rs, Planners, & Architects v. Smith*, 643 P.2d 1156, 1159 (Kan. Ct. App. 1982).

[44] *Id.*

[45] *Id.*

[46] *Id.* (first citing *Hull v. Prairie Queen Mfg. Co.*, 141 P. 592 (Kan. 1914); then citing *W. Advert. Co. v. Crawford*, 276 P. 813 (Kan. 1929); then citing *Solomon R.R. Co. v. Jones*, 2 P. 657 (Kan. 1883); and then citing *Belluomo v. KAKE TV & Radio, Inc.*, 596 P.2d 832 (Kan. Ct. App. 1979)).

relationship between First Step and CACH that gave him reason to believe that First Step had authority to enter into the Agreement on CACH's behalf.  Plaintiff offers no authority or analysis as to why a debt collector, by virtue of its relationship with a client alone, is clothed with sufficient apparent authority to bind those clients to an agreement settling a lawsuit filed by a debtor against the debt collector.  And the Court cannot conclude that a debt collector—whose relationship with a client is not one of agency unless the client retains the right of control over significant details of the debt collector's work[47]—is sufficiently akin to a general manager, president, or partner.

Because Plaintiff does not plausibly allege that the mere relationship between First Step and CACH clothed First Step with apparent authority, or that CACH otherwise took any steps to hold First Step out as its agent, Plaintiff has failed to allege any act by CACH that would allow a reasonable person to believe First Step had authority to bind CACH to the Agreement.  Thus, the Court concludes that Plaintiff has not alleged facts sufficient to support an inference that First Step had apparent authority to enter into the Agreement on CACH's behalf.

In sum, the Court finds that the terms of the Agreement unambiguously prohibit only First Step from engaging in further collection activities on the debt.  Even if the Agreement purported to prohibit not only First Step but also its clients from collecting on the debt, Plaintiff has insufficiently pleaded facts showing that First Step had apparent authority to bind CACH to the Agreement.  Because Plaintiff's claims all rely on an assumption that the Agreement prohibits CACH from collecting on the debt, and the Court has found that it does not, Credit Control's motion for judgment on the pleadings is granted.  The Court takes no opinion on

---

[47] *See McDonnell v. Music Stand, Inc.*, 886 P.2d 895, 899 (Kan. Ct. App. 1994) (citing 15A Am. Jur. 2d, Collection and Credit Agencies § 2).

whether, had the Agreement prohibited CACH from collecting on the debt, Plaintiff could plausibly allege that Credit Control violated the FDCPA or the KCPA when it sent Plaintiff the collection letter.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Credit Control, LLC's Motion for Judgment on the Pleadings (Doc. 21) is **granted**.  The Amended Complaint is dismissed with prejudice as to Credit Control, LLC.

**IT IS SO ORDERED.**

Dated: March 22, 2021

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE
